UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 2:13-CR-00033-JRG-DHI |
| | ) |
| TROY DOTSON | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Troy Dotson's Motion for Compassionate Release [Doc. 40]; the United States' Response [Doc. 45]; Mr. Dotson's Reply [Doc. 44]; and Mr. Dotson's letter [Doc. 39], which the Court construes as a motion for reconsideration. For the reasons herein, the Court will deny Mr. Dotson's motions.

### I.   BACKGROUND

In 2013, Mr. Dotson pleaded guilty to transporting and distributing child pornography by using a means or facility of interstate commerce, in violation of 18 U.S.C. § 2252A(a)(1)–(2). [Plea Agreement, Doc. 14; Minute Entry, Doc. 16]. Leading up to sentencing, the probation officer prepared and filed a presentence investigation report, in which she informed the Court that Mr. Dotson had no previous criminal history. [PSR (on file with the Court)]. Mr. Dotson, however, received several offense-specific enhancements—including a five-level enhancement under USSG § 2G2.2(b)(7)(D) because his offense involved 600 or more images—and his total offense level was 33 and his criminal history was I. [*Id.* ¶¶ 28, 36, 41]. At sentencing, the Court sentenced him to 135 months' imprisonment—the low end of his guidelines range—as well as a lifetime term of supervised release, [J., Doc. 25, at 2–3], which neither party opposed, [Hr'g Tr., Doc. 29, at 50:8–13].

Acting pro se, Mr. Dotson, who is thirty-three years old, now moves the Court to order his compassionate release under 18 U.S.C. § 3582(c)(1)(A) for three reasons. First, he requests compassionate release because of the COVID-19 pandemic, citing an underlying medical condition: high blood pressure. [Def.'s § 3582(c) Mot. at 13]. He also argues that he is entitled to compassionate release due to "poor prison conditions" at FCI Elkton, the facility where he is serving his sentence. [*Id.* at 1]. Lastly, Mr. Dotson, who has no siblings, [PSR ¶ 46], moves for compassionate release so he can act as a caregiver to his parents, who are in poor health, [Def.'s § 3582(c) Mot. at 1, 5, 9–13]. Mr. Dotson, in fact, has filed letters from his parents, who attest to their own declining health, [Joint Letter, Doc. 40-2, at 4], and from his parents' physicians, who state that Mr. Dotson's father is in kidney failure and undergoing dialysis, [Dr. Bae Letter, Doc. 40-2, at 3], and that his mother has "extensive vascular disease," [Dr. Ramaprasad Letter, Doc. 40-2, at 1]. Mr. Dotson has also filed letters from three of his aunts, all of whom state that they are unable to care for Mr. Dotson's parents on a full-time basis because they have personal responsibilities that keep them from doing so. [Aunt Carpenter, Cupp, and Smith Letters, Doc. 40-2, at 5–7]. The United States, in response, opposes Mr. Dotson's motion, arguing that he has failed to identify an extraordinary and compelling reason for his release under USSG § 1B1.13. [United States' Resp. at 1]. Having carefully reviewed the parties' arguments, the Court is now prepared to rule on Mr. Dotson's motion.

## II. ANALYSIS

"[O]nce a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (quoting *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). Although § 3582(c)(1)(A) begins with the declaration that "[t]he court

2

may not modify a term of imprisonment once it has been imposed," Congress enacted the First Step Act, Pub. L. No. 115-319, 132 Stat. 5194 (2018), which amended § 3582(c)(1)(A) so that courts can consider motions for compassionate release once a defendant either exhausts his administrative remedies with the Bureau of Prisons or waits thirty days after submitting a request to the warden:

> The court may not modify a term of imprisonment once it has been imposed except that . . . the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment[.]

§ 3582(c)(1)(A). The United States concedes that "[t]he Court has authority to consider [Mr. Dotson's] motion since 30 days have passed since [he] sought compassionate release from the warden of his facility on the same grounds he presents to this Court." [United States' Resp. at 2].

### A. Extraordinary and Compelling Reason

Under § 3582(c)(1)(A), the Court's task is to determine whether (1) "extraordinary and compelling reasons" warrant a reduction and whether (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" and "the factors set forth in section 3553(a) to the extent that they are applicable." § 3582(c)(1)(A)(i). "[C]ourts have universally turned to USSG § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons' that may warrant a sentence reduction." *United States v. Coker*, No. 3:14-CR-085, 2020 WL 1877800, at *3 (E.D. Tenn. Apr. 15, 2020) (quotation omitted). The Application Notes to § 1B1.13 state that, when a defendant suffers from a medical condition, extraordinary and compelling reasons exist in two scenarios: the medical condition (1) is a terminal illness or (2) "substantially diminishes the ability of the defendant to provide self-care within the

3

environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13 n.1(A)(i)–(ii).

In considering whether Mr. Dotson's high blood pressure, against the backdrop of the COVID-19 pandemic, "substantially diminishes [his] ability" to "provide self-care within" the prison's walls and leave him without an expectation of recovery, *id.* § 1B1.13 n.1(A)(ii), the Court turns to the Center of Disease Control's guidelines, *see, e.g.*, *Cameron v. Bouchard*, ___ F. Supp. 3d ___, 2020 WL 2569868, at *4–5 (E.D. Mich. May 21, 2020), *vacated on other grounds*, ___ F. App'x ___, 2020 WL 3867393 (6th Cir. 2020); *Awshana v. Adduccl*, 453 F. Supp. 3d 1045, 1050 (E.D. Mich. 2020); *see also Valentine v. Collier*, 140 S. Ct. 1598, 1600 n.2 (2020) (citing the CDC's guidelines in a case involving COVID-19); *cf. Sch. Bd. of Nassau Cty. v. Arline*, 480 U.S. 273, 287 (1987) (stating that "courts normally should defer to the reasonable medical judgments of public health officials" (footnote and quotation omitted)). According to the CDC's guidelines, "[p]eople of any age with the following conditions *are at increased risk* of severe illness from COVID-19":

- Cancer
- Chronic kidney disease
- COPD (chronic obstructive pulmonary disease)
- Heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies
- Immunocompromised state (weakened immune system) from solid organ transplant
- Obesity (body mass index [BMI] of 30 kg/m$^2$ or higher but < 40 kg/m$^2$)
- Severe Obesity (BMI ≥ 40 kg/m$^2$)
- Sickle cell disease
- Smoking
- Type 2 diabetes mellitus

*Coronavirus Disease 2019 (COVID-19): People Who Are at Higher Risk for Severe Illness*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Oct. 16, 2020).

4

Mr. Dotson's underlying condition—high blood pressure—matches none of those that the CDC identifies as likely to place an individual at a heightened risk of severe illness from COVID-19. The Court sympathizes with Mr. Dotson's concerns, but it is unwilling to order the release of prisoners whose underlying conditions, based on the CDC's guidelines, do not place them at a heightened risk of severe illness from COVID-19; otherwise, the Court, to be evenhanded, would face the untenable situation of having to release all prisoners with any underlying condition. *See United States v. Wright*, No. CR-16-214-04, 2020 WL 1976828, at *5 (W.D. La. Apr. 24, 2020) ("The Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." (footnote omitted))*; see also United States v. Dusenbery*, No. 5:91-cr-291, 2019 WL 6111418, at *2 (N.D. Ohio Nov. 18, 2019) (recognizing that "compassionate release due to a medical condition is an extraordinary and rare event" (quotation omitted)).

### B. Conditions at FCI Elkton

Even if the Court were to view Mr. Dotson's underlying condition as likely to place him at a greater risk of severe illness from COVID-19, he still would not be entitled to compassionate release because he provides the Court with no indication that he is in danger of contracting the virus.[1] The general threat of COVID-19—that is, the fear that it may infiltrate a prison's population—cannot justify compassionate release under § 3582(c)(1)(A). *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]"); *United States v. Smoot*, No. 2:19-CR-20, 2020 WL 1501810, at *3

---

[1] Mr. Dotson in fact acknowledges that the staff at FCI Elkton has "consistantly [sic] adjusted the protocols on mask-wearing," has "laid out in some areas sixfoot [sic] spacing," and has required inmates to "wear [their] masks," though he complains that the masks are "very porous" and that the staff has "become lax . . . to some degree." [Def.'s Reply at 6].

5

(S.D. Ohio Mar. 30, 2020) ("The mere possibility of an outbreak at his facility does not equate to a compelling enough reason to justify [the defendant's] release." (citation omitted)); *United States v. Eberhart*, ___ F. Supp. 3d ___, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("[A] reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A).").

COVID-19 has not affected FCI Elkton to the same degree as other federal facilities throughout the country. The Federal Bureau of Prisons ("BOP") reports only one active case among the inmates and no active cases among the staff at FCI Elkton. *COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop. gov/coronavirus/ (last updated Oct. 26, 2020). Under these circumstances, Mr. Dotson is not entitled to compassionate release. *Cf. United States v. You*, No. 20-5390, at 2 (6th Cir. Apr. 22, 2020) (PACER) (noting the scarcity of "COVID-19 cases at [the defendant's] present facility" and that "her facility has implemented precautionary measures to protect those detained in the facility"); *see Raia*, 954 F.3d at 597 (referring to the BOP's "extensive and professional efforts to curtail the virus's spread" (citation omitted)); *United States v. Elebesunu,* No. GJH-13-008, 2020 WL 3791978, at *2 (D. Md. July 7, 2020) ("Under circumstances such as these where the number of cases at the facility is low and BOP appears to have controlled the spread, the imminence of the risk to [the defendant] is diminished and weighs against granting compassionate release." (citation omitted)); *United States v. Arafat*, No. 12-cr-45, 2020 WL 3790727, at *6 (D. Minn. July 7, 2020) ("[E]ven assuming [the defendant's] underlying medical conditions exist, [he] has failed to demonstrate a particularized risk of contracting the disease. To date, FCI-Sandstone has only one reported case of COVID- 19." (citation omitted)).

### C. Familial Hardship

Mr. Dotson, in arguing that he is entitled to compassionate release because his parents' health is deteriorating, presents his second iteration of this argument to the Court. The Court previously rejected this argument in July, concluding that it did not satisfy USSG § 1B1.13 n.1(C)(i)–(ii)'s conditions for compassionate release based on familiar hardship. [Mem. Op. & Order, Doc. 36, at 1–3]. Under § 1B1.13 n.1(C)(i)–(ii), familial hardship can constitute grounds for compassionate release in two instances: (1) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or (2) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." § 1B1.13 n.1(C)(i)–(ii).

Mr. Dotson seeks reconsideration of the Court's decision, [Def.'s Mot. Recons. at 1], arguing now, for the first time, that he is his parents' "sole caregiver," [Def.'s § 3582(c) Mot. at 1]. Mr. Dotson, also for the first time, relies on *United States v. Bucci*, 409 F. Supp. 3d 1 (D. Mass. 2019), a case in which the district court ruled that the defendant, a federal inmate, was entitled to compassionate release under § 1B1.13 n.1(C)(ii) because he was "the 'only available caregiver' for an incapacitated parent" and had served "substantial time in prison," *id.* at 2–3 (quoting § 1B1.13 n.1(C)(ii)). The court reasoned it could not "discount [the defendant's] unique role [as his mother's sole caregiver] simply because the incapacitated family member is a parent and not a spouse." *Id.* at 2.

Although no specific rule allows for motions for reconsideration in criminal cases, courts ordinarily review these motions "under the same standards that govern a civil motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e)." *United States v. Reynolds*, No. 3:08-cr-143, 2018 WL 1950433, at *1 (E.D. Tenn. Apr. 24, 2018) (citation omitted). Rule 59(e)

7

states that a party may file a motion to alter or amend judgment within twenty-eight days from the entry of judgment,[2] and it permits a court to alter judgment based on "(1) a clear error in law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (quotation omitted). A district court has "considerable discretion" in deciding whether to grant a motion under Rule 59(e). *Id.* (citation omitted).

A motion under Rule 59(e), however, "run[s] contrary" to notions of "finality and repose" and is therefore "generally discouraged" and "afford[s] relief only under extraordinary circumstances." *Polzin v. Barna & Co.*, No. 3:07-cv-127, 2007 WL 4365760, at *3 (E.D. Tenn. Dec. 11, 2007). In this vein, "parties should not use [Rule 59(e)] to raise arguments which could, and should, have been made before judgment issued." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (citation and quotation omitted); *see U.S. ex rel. Am. Textile Mfrs. Inst., Inc. v. Limited, Inc.*, 179 F.R.D. 541, 547 n.9 (S.D. Ohio 1998) ("If the movant simply . . . presents arguments which originally could have been argued, then the movant's proper recourse is an appeal to the circuit court." (citations omitted)).

While the Court sympathizes with Mr. Dotson and his parents, several impediments foreclose his entitlement to relief under Rule 59(e). To start with, his argument that he is his parents' sole caregiver is a new argument—one that he did not conceive in his original motion—and the Court therefore cannot acknowledge it here in the context of reconsideration. *Sault Ste. Marie Tribe*, 146 F.3d at 374; *U.S. ex rel. Am. Textile Mfrs. Inst.*, 179 F.R.D. at 547 n.9. But more fundamentally, Mr. Dotson does not assert, in raising this new argument, that the Court

---

[2] Mr. Dotson filed his motion for reconsideration nearly ninety days after the Court denied his original motion, and his motion for reconsideration therefore fails because it is untimely under Rule 59. Even so, the Court will go on to address the merits of his motion for reconsideration.

committed a clear legal error in denying his original motion, does not rely on newly discovered evidence, does not cite an intervening change in controlling law, and does not identify a need to prevent manifest injustice. *Leisure Caviar*, 616 F.3d at 615.

In fact, in the intervening months between the Court's denial of Mr. Dotson's original motion and the filing of his motion for reconsideration, this Court expressly stated in a separate criminal case that § 1B1.13 n.1(C) "relates *only* to situations involving" incapacitation of the defendant's minor child or children or incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver—a statement that is entirely consistent with § 1B1.13 n.1(C)'s plain terms. *United States v. Brown*, No. 3:17-CR-37-TAV-DCP-5, 2020 WL 4496507, at *5 (E.D. Tenn. Aug. 4, 2020) (emphasis added); *see United States v. Hunter*, No. 3:06-cr-61, 2020 WL 127711, at *3 (S.D. Ohio Jan. 10, 2020) ("While the Court empathizes with [the defendant's] . . . difficult position, and understands that his mother's medical condition is no doubt serious, family circumstances that constitute 'extraordinary and compelling reasons' do include those presented." (citation omitted)); *United States v. Ingram*, 2:14-CR-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019) ("Many, if not all inmates, have aging and sick parents. Such circumstance is not extraordinary."); *see also United States v. Goldberg*, No. 12-180 (BAH), 2020 WL 1853298, at *4 (D.D.C. Apr. 13, 2020) ("While certainly admirable, a desire to help care for one's elderly parents does not qualify as an 'extraordinary and compelling reason' for release under U.S.S.G. § 1B1.13, nor, therefore, under 18 U.S.C. § 3582(c)(1)(A)(i).").

To accept Mr. Dotson's contention that his parents' poor health is a basis for his release, the Court would have to defy § 1B1.13 n.1(C)'s plain meaning and graft new language into this provision, exceeding its judicial authority. *See United States v. Plavcak*, 411 F.3d 655, 661 (6th

Cir. 2005) ("[I]f the words of the statute are unambiguous, the judicial inquiry is at an end, and the plain meaning of the text must be enforced." (quotation omitted)); *see also United States v. Butler*, 207 F.3d 839, 847 (6th Cir. 2000) ("It was proper for the district court to take a plain language approach in its interpretation of § 3B1.4, because courts must treat the sentencing guidelines 'as if they were a statute' and follow 'the clear, unambiguous language if there is no manifestation of a contrary intent.'" (quotation omitted)).

Even if the Court could look past § 1B1.13 n.1(C)'s plain language, Mr. Dotson still would not be entitled to relief because his assertion that he is his parents' sole caregiver lacks sufficient evidentiary support. Although Mr. Dotson has provided the Court with letters from three of his aunts—all of whom state that *individually* they are unable to contribute to the full-time care of Mr. Dotson's parents—neither they nor Mr. Dotson explain why a *collaborative* effort on their part would not suffice to provide Mr. Dotson's parents with the care they need. Perhaps Mr. Dotson's aunts could each tend to his parents one day a week, for a total of three days of care a week. Mr. Dotson does not explain why this arrangement is unworkable or why it would not be enough to support his parents. The absence of this explanation leaves the Court unable to conclude that Mr. Dotson, and Mr. Dotson alone, is the only person capable of caring for his parents—especially in light of Mr. Dotson's recognition that his extended family also consists of uncles and cousins. [Def.'s Letter, Doc. 40-1, at 12]; *see* [PSR ¶ 46 (stating that Mr. Dotson has a "good relationship" with his Uncle Mike Smith)]. Mr. Dotson therefore fails to establish the "extraordinary circumstances" necessary to entitle him to relief under Rule 59(e). *Polzin*, 2007 WL 4365760 at *3.

10

Case 2:13-cr-00033-JRG-DHI   Document 50   Filed 10/27/20   Page 10 of 11   PageID #: 544

### III. CONCLUSION

In sum, the Court sympathizes with Mr. Dotson's concerns, as well as with his parents' poor health, but he is not entitled to compassionate release under § 3582(c)(1)(A). His Motion for Reconsideration [Doc. 39] and his Motion for Compassionate Release [Doc. 40] are therefore **DENIED**.

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE